UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| CHARLIE BELLS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 15-185-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES C. HOLLAND, Warden USP-McCreary, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Inmate Charlie Bells, Jr, is confined by the Bureau of Prisons ("BOP") at the United States Penitentiary ("USP")-Victorville in Adelanto, California. Proceeding without counsel, Bells has filed a civil rights complaint asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [Record No. 1, as amended at Record No. 11][1] Bells alleges that between late July 2015 and late August 2015, four USP-McCreary officials violated his federal constitutional rights.[2]

Because Bells asserts claims against government officials and has been granted pauper status, the Court must conduct a preliminary review of his complaint pursuant to 28

---

[1] Bells was confined at the USP-McCreary in Pine Knot, Kentucky, at the time he filed this action. Bells notified the Court on March 25, 2016, that he had been transferred to USP-Victorville. [Record No. 14]

[2] The named defendants are: (1) James C. Holland, former Warden of USP-McCreary; (2) "Mabe," identified as a "Unit Manager" of USP-McCreary; (3) "McKnight," identified as a "Lieutenant Correctional" official of USP-McCreary; and "J. Smith," Correctional Officer at USP-McCreary.

U.S.C. §§ 1915(e)(2)(B) and 1915A(a).  These statutes require that the Court dismiss any action which: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. 1915(e)(2)(B)(i)-(iii); 1915A(b)(1)-(2).[3]  As explained below, Bells filed this action prematurely.  As a result, it will be dismissed without prejudice.

## I.

Bells' handwriting is difficult to decipher, and he uses an awkward and disjointed writing style which makes it difficult to understand the substance of many allegations.  He alleges that on various dates between July 29, 2015 and August 21, 2015, and while he was confined in the Special Housing Unit of USP-McCreary, the defendants verbally threatened to: (i) place him in the general population; (ii) expose him to physical harm from other inmates and/or USP-McCreary staff members; (iii) transfer him to another facility; and (iv) deny him "staff assistance".  Bells further claims that the defendants: (i) demonstrated disrespectful behavior towards him; (ii) assembled a use-of-force "TEAM" which subjected him to an unnecessary strip-search; (iii) searched his cell for a pair of socks; and (iv) issued a "fraudulent" Incident Report charging him with refusing to submit to cell search.  [Record No. 1, pp. 3-7, § III "Statement of Claims"][4]

Bells states that he submitted grievances and/or appeals complaining about these alleged actions to all three levels of the BOP's administrative remedy process: the Warden,

_____

[3]  Because Bells is proceeding *pro se*, the Court liberally construes his claims and accepts his factual allegations as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

[4]  Pages 2, 4, 6, 8, 10, 12, 14, and 15 of the Complaint are blank.

the BOP Regional Director, and the BOP's Office of General Counsel.  [*Id.*, p. 7].   Bells lists the dates on which he filed the first two rounds of grievances, but these dates are not in chronological order.  He asserts that he submitted his Request to the Warden (BP-9) on "08-27-15," and submitted his appeal (BP-10) to the BOP's Regional Office on "07-30" (year illegible).   [*Id.*, § IV (A)(2), "Exhaustion of Administrative Remedies"]   Bells further contends that, as of the date of his Complaint, his final appeal to the BOP's Office of General Counsel (BP-11) was "pending."  [*Id.*]  It appears that Bells dated his Complaint "09-19-15." [*Id.*, p. 15, "Certification"][5]

Bells apparently submitted a "Request for Administrative Remedy" to the Warden of USP-McCreary on September 2, 2015.  In that document, he complained of "Unprofessional, Inappropriate Conduct or Misconduct by Staff." On September 3, 2015, the USP-McCreary Administrative Remedy Coordinator issued "Rejection Notice" of that Remedy Request, identified as 834409-F1.  [Record No. 1-2, p. 9]  The Remedy Request was rejected because Bells had either failed to informally resolve his claims, or had failed to attach documentation showing that he had attempted an informal resolution.  [*Id.*]  Bells was advised that he could cure the defect by submitting the proper documentation within 5 days of the Rejection Notice.  [*Id.*]

Bells alleges that the defendants violated numerous provisions of the Constitution, including but not limited to the Eighth Amendment's prohibition against cruel and unusual punishment and the Fifth Amendment's prohibition against discrimination.  [Record No. 1, p.

---

[5]  The postmark on the envelope in which Bells mailed his Complaint is dated Tuesday, October 20, 2015.  [Record No. 1-5, p. 1] The Clerk of the Court received Bells' Complaint on Monday, October 26, 2015, and docketed it the following day.

7, § III (D)]  Bells further alleges in general terms that he was denied "effective remedies." [*Id*.]  He seeks an order transferring him to a "safer environment," specifically, an "F.C.I." (Federal Correctional Institution), placing a lien on the defendants' "personal assets and investments," and a judgment against the defendants in the amount of $3,000,000.  [*Id*., p. 15, § VI, "Relief"; *see also*, Record No. 1-1, p. 1]

## II.

The Prison Litigation Reform Act ("PLRA"), 42 USC § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under [42 USC § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Exhaustion is mandatory.  *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Further, it applies to any claim that arises out of any aspect of prison life, whether it involves general circumstances or particular episodes, and whether it alleges excessive force or some other wrong.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The four-tiered administrative remedy available to BOP inmates complaining about aspects of their confinement is outlined in the BOP's Administrative Remedy Program.  28 C.F.R. §§ 542.10-542.19.  Section 542.13(a) requires that an inmate first informally present his complaint to the staff [BP–8 form] before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, he may then file a formal written request to the Warden [BP-9 form]. *See* 28 C.F.R. § 542.14(a).  If the inmate is not satisfied

with the Warden's response, he may appeal to the Regional Director [BP-10 form]. Thereafter, if the inmate is not satisfied with the Regional Director's response, he may appeal that decision to the Office of General Counsel [BP-11 form]. *See* 28 C.F.R. § 542.15.

The BOP's administrative procedure includes established response times. 28 C.F.R. § 542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director has 30 days to respond; and General Counsel has 40 days to respond. Only one written extension of time of 20 to 30 days is permitted. The inmate may consider the absence of response as a denial at that level of he does not receive a response within the allotted time. [*Id.*]

In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court explained that exhaustion of administrative remedies must be done "properly," which includes going through all agency steps, following all directions, and adhering to all deadlines set by the administrative rules. *Id.* at 90. As a federal prisoner, Bells is required to pursue all the BOP's administrative remedy process regarding his various claims *before* filing an action. According to his Complaint, the earliest improper conduct at USP-McCreary allegedly occurred on July 29, 2015. Conversely, the most recent improper conduct at the facility allegedly occurred on August 21, 2015. [Record No. 1, pp. 3-5]

Absent extensions, the BOP administrative remedy process takes approximately 90 days to complete. However, with extensions, the process could take up to 120 days. Bells appears to have dated his Complaint on September 19, 2015, which means that he filed the action before the four-step administrative process could have been completed regarding: (1) the earliest described conduct on July 29, 2015; (2) the most recent described conduct on

-5-

August 21, 2015; and (3) the conduct which allegedly occurred between those two dates. Regardless of whether September 19, 2015, or October 26, 2015, is used, it is clear from Bells' statements that he filed this action prematurely before completing the BOP's administrative remedy process.

The BOP's Mid-Atlantic Regional Office's ("MARO") September 3, 2015, Notice rejecting administrative remedy request No. 834409-F1 reinforces this conclusion. Assuming that Bells cured the defect identified in that "Rejection Notice" and resubmitted his BP-9 remedy request within five days of September 3, 2015, he still could not have fully and completely exhausted his claims alleging improper conduct on the part of the USP-McCreary staff in accordance with 28 C.F.R. §§ 542.10-19 on or before either September 19, 2015 (the date of the Complaint) or October 26, 2015 (the date on which the Complaint was filed).  Further, Bells acknowledges in his Complaint that his BP-11 appeal to the BOP's Office of General Counsel was "pending" as of the date on which he filed this action. [Record No. 1, p. 7, § IV (A)(2)]

Bells also attaches a copy of a "sensitive" remedy request which he submitted to the MARO on July 30 2015, and which the MARO stamped as received on August 4, 2015. [Record No. 1-2, p. 5]  As noted previously, Bells' handwriting is difficult to read, but the plaintiff appears to allege in that submission that, on or about July 29-30, 2015, Defendant Mabe and other USP-McCreary officials endangered his life by ordering him to return to the "compound" where an unidentified hostile inmate was located.  [*Id.*]

An inmate may circumvent the Warden and submit a "sensitive" remedy request directly to the Regional Director, "[i]f the inmate reasonably believes the issue is sensitive

-6-

and the inmate's safety or well-being would be placed in danger if the Request became known at the institution." 28 C.F.R. § 542.14(d)(1). If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, it shall be accepted. Otherwise, the inmate shall be advised in writing of that determination. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission. [*Id.*]

Bells has failed to attach any documentation demonstrating that the MARO accepted his remedy request as a "sensitive" matter. Absent such acceptance, Bells was required to submit a remedy request (on his claim that his life was being endangered) directly to the Warden for consideration, and appeal any adverse decision to the MARO. If necessary, he could then appeal to the BOP's Office of General Counsel. Given the fact that Bells dated his "sensitive" remedy July 30, 2015, and that he dated his Complaint September 19, 2015, it is clear that Bells could not have fully and properly complied with the three remaining steps set forth in 28 C.F.R. §§ 542.10-19 (on his claim alleging endangerment to his life) prior to filing this action on September 19, 2015.

Where a plaintiff admits that he did not exhaust his administrative remedies before he filed suit, or that he started the process but not did not complete it, dismissal of the complaint is appropriate upon initial review. *Jones v. Bock*, 549 U .S. 199, 214-15 (2007) (district court can dismiss a complaint *sua sponte* when it is apparent from the face of the complaint that claim is barred by affirmative defense); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (where complaint was clear that prisoner failed to exhaust administrative remedies, the district court may dismiss it *sua sponte* for failure to state a claim); *Washington v. Unknown*

-7-

*C/O*, No. 1:13-CV-10, 2013 WL 170173, at *4 (S.D. Ohio Jan. 16, 2013) ("… although exhaustion of administrative remedies need not be pled specifically in the complaint, where it is apparent from the face of the complaint that an inmate has failed to exhaust the prison grievance procedure, *sua sponte* dismissal for failure to state a claim upon which relief may be granted is appropriate on initial review of the complaint."); *Fletcher v. Myers*, No. 5:11-141-KKC (E.D. Ky. May 17, 2012), *aff'd*, No. 12-5630 (6th Cir. Jan. 4, 2013) ("Because Fletcher's failure to exhaust, or to attempt to exhaust, administrative remedies is apparent from the face of his complaint, the district court properly dismissed Fletcher's complaint on that basis."); *Brown v. Wilson*, No. 10-CV-347-KSF, 2011 WL 676937, at *3 (E.D. Ky. Feb. 16, 2011) (dismissing federal prisoner's complaint where it was clear from the face of the complaint that he had not fully exhausted his administrative remedies); *Smith v. Lief*, No. 10-CV-08-JMH, 2010 WL 411134, at *4 (E.D. Ky. Jan. 27, 2010); *Gunn v. Ky. Dept. of Corrections*, No. 5:07CV-P103-R, 2008 WL 2002259, at *4 (W.D. Ky. May 7, 2008); *Deruyscher v. Michigan Dept. of Corrections Health*, No. 06-15260-BC, 2007 WL 1452929, at *3 (E.D. Mich. May 17, 2007) (dismissing *sua sponte* prisoner's complaint alleging an the Eighth Amendment violation, where he admitted that the prison exhaustion process was still pending).

Here, it is clear from the face of Bells' Complaint that he filed this action before he fully and completely exhausted his various constitutional claims according to BOP policy. As a result, all of his claims will be dismissed without prejudice.

## III.

Bells has requested injunctive relief, seeking to be transferred to another BOP facility which would afford him a "safer environment."  [Record No. 1, p. 15]  As previously noted, Bells notified the Court that he has been transferred to the USP-Victorville in Adelanto, California.  An inmate's transfer or release renders the district court unable to grant the injunctive requested relief.  *Fredette v. Hemingway*, 65 F. A'ppx 929, 931 (6th Cir. 2003); *see also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claim for declaratory and injunctive relief becomes moot once the prisoner is transferred from the prison about which he complained to a different facility); *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (inmate's request for injunctive relief mooted upon transfer from relevant prison); *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) (same).

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

(1)     The Complaint [Record No. 1] filed by Plaintiff Charlie Bells, Jr., is **DISMISSED** without prejudice

(2)     Bells' request for injunctive relief [Record No. 1] is **DENIED** as **MOOT.**

This 18th day of May, 2016.



Signed By:

*Danny C. Reeves*  DCR

**United States District Judge**